Joe A. LAUGHLIN, Trustee, Appellant,

v.

James STEPHENSON et ux., Appellees.

No. 16413.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 22, 1975.

Frank Stovall, Houston, Larry E. Wadler, Wharton, for appellant.

W. W. Kilgarlin, Warren E. Hancock, Jr., Kilgarlin, Dixon & Hancock, Houston, of counsel, for appellees.

EVANS, Justice.

This is a suit brought by Joe A. Laughlin, Trustee, for specific performance of an earnest money agreement dated April 13, 1973 executed by Mr. and Mrs. James Stephenson, as Seller, and by Laughlin, Trustee, as Purchaser, covering 100 acres of land in Fort Bend County, Texas. The trial court denied all relief, including the Stephensons' cross-action for damages for cloud allegedly cast on their title. Joe Laughlin, Trustee, appeals.

The facts are for the most part undisputed. Laughlin, a real estate broker, was associated in his business with John A. Watson. In April, 1973 Watson contacted the Stephensons about certain property which they had advertised for sale. Several days later, Laughlin and Watson drove to the Stephensons' home in Fort Bend County where they spent the afternoon with Mr. Stephenson looking at parcels of land which Stephenson owned. After viewing the 100 acre tract, Laughlin and Watson expressed their interest in purchasing the property and discussed the terms of the transaction with Stephenson. It was explained to them at that time that Stephenson had contracted to buy the property from a party who lived in San Antonio and that a suit brought by Stephenson to specifically enforce the contract was then pending on appeal.

On April 13, 1973 Laughlin returned to the Stephensons' home with an earnest money contract which had been prepared at his office. The contract was typed on nine legal size pages and contained nineteen separate paragraphs. The parties spent some time going over the contract and discussing the terms. Stephenson testified that he didn't have his glasses and that his wife read the contract and commented on it. She then said: "It is o. k., sign it." He testified that she did not notice, and therefore failed to bring to his attention, the provision for a 6% brokerage commission to the purchaser-agent, Mr. Laughlin.

Before the contract was executed the parties made a number of changes which they both initialed. Laughlin then took the signed contract and his earnest money check to Capital Title Company in Fort Bend County. Within fifteen minutes after Laughlin left the Stephensons' home, Stephenson called the manager of Capital Title Company and then spoke with Laughlin on the telephone. Stephenson testified that he advised Laughlin that the contract provided that he was to pay a 6% brokerage commis-

sion (which would have amounted to the sum of $3900.00) and that he had never intended to agree to such a provision. He testified that his agreement was to get $650.00 an acre net and that after Laughlin left his house, his wife discovered that the contract provided for a realtor's commission which was not part of their agreement. He said that he advised Laughlin of this and that Laughlin replied that if he did not want to accept a reduction in the commission to the amount of $2,000.00, to "just forget about the whole deal." He said Laughlin told him: "All right. I am going to change it and you come down and pick it up. If you don't like it, forget it." Stephenson testified that his wife later went down to the title company and retrieved the contract and about a week later the Stephensons entered into a contract to sell the property to another party for a higher price per acre.

The earnest money agreement, prior to its alteration at the title company, provided for a total sales price of $65,000.00 based on the per-acre price of $650.00, for a down payment of $7,900.00 and for a deferred consideration of $57,100.00. It further provided for a commission to be paid to Watson and Laughlin of 6% of the total sales price which would have amounted to the sum of $3,900.00. The testimony showed that the alterations made after execution at the title company were done by Mr. Marvin Zindler, Jr., Manager of the Title Company, in his own handwriting and were initialed solely by the purchaser, Joe Laughlin. These changes were as follows: The total purchase price was increased to $66,900.00 based on a per-acre determination of $669.00; the cash down payment was reduced to $6,000.00, the deferred consideration increased to $59,000.00, and the commission was stipulated to be the sum certain of $2,000.00.

Subsequent to the events described above, Laughlin sent a letter to Stephenson

dated April 16, 1973 which recites the following:

"The business deal we have agreed upon is as follows:

| | |
|---|---|
| 100 Acres @ $650 | $65,000 |
| 1st Lien Note | 31,500 |
| Cash Down Payment | 6,000 |
| 2nd Lien Note (to you) | 27,500 |

"Out of the cash down payment, you are to pay the following:

| | |
|---|---|
| Total Cash Down Payment | $ 6,000 |
| Commission | 2,000 |
| Title Policy | 300 |
| Survey & Other Expenses | 200 |
| Net to You | $ 3,500 |

"We agree that you should receive a net of $3,500 out of the sale, provided the survey and legal expenses are reasonable for a transaction of this nature. You agreed to pay $2,000 of the commission. The first lien note is payable quarterly over fifteen (15) years at eight percent (8%); the second lien note is payable quarterly over fifteen (15) years at seven percent (7%).

"All other provisions of the contract remain in effect."

This letter contained a provision at the bottom for a date and the signature of Stephenson, but the testimony indicated it was never signed or returned to Laughlin. It was Laughlin's position, as reflected by his testimony, that the changes in the earnest money contract were requested by Stephenson over the telephone and were made for his benefit. Laughlin testified that Stephenson's greatest concern throughout their negotiations was that he receive a net payment of $3,500.00 and that it was primarily for the purpose of assuring Stephenson that he would receive such net payment that he wrote the letter of April 16, 1973 to him. Mr. Laughlin stated that he did not recall having told Mr. Stephenson on the telephone that if he didn't want to go along with the changes that the whole deal was off, but he said he was not sure exactly what he said to Mr. Stephenson in that respect.

The appellant, Mr. Laughlin, argues that the earnest money agreement was complete and binding upon both parties after execution at the Stephensons' home and that a unilateral mistake on the part of Mr. Stephenson as to one of the terms of the agreement constitutes no basis for the rescission of the contract. He points to the absence of pleadings or evidence of fraud or mutual mistake and suggests that the Stephensons should not be permitted to avoid the legal effect of the contract on the basis of their unilateral mistake which he asserts was due to their negligence in failing to read and appreciate its contractual terms.

■ The record reflects that while a request was made for findings of fact and conclusions of law, the trial court's omission to file such findings and conclusions was not called to its attention as required by Rule 297, Texas Rules of Civil Procedure. Therefore, we must consider that all facts essential to the judgment were found by the trial court and we must affirm the trial court's judgment if it can be supported on any theory presented by the record. *Polk v. Grogan's Wholesale & Retail Lumber,* 325 S.W.2d 201 (Tex.Civ.App.—Waco 1959, writ ref'd n. r. e.). In reviewing the evidence in the record to determine whether it supports the judgment and the implied findings incident thereto, we consider the evidence in a light most favorable to the Stephensons' position. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1951).

■ It is clear from the facts of this case that the Stephensons discovered their error within a few minutes after the execution of the contract and that they wasted no time in making their discovery known to Mr. Laughlin. Where a mistake is quickly discovered and notice promptly given to the

vendor who has suffered no substantial change of position the court in the exercise of its equity jurisdiction may refuse to grant specific performance. 3 Corbin on Contracts, Sec. 612, pp. 700–702 (1960 ed.); See also, Restatement of the Law of Contracts, Secs. 366 and 267.

" 'Where the court is satisfied that the result which bears so hard upon the defendant, though legally a constituent part of the contract, was not intended by the parties at the time of the agreement—in fact, was not in contemplation as the effect of the agreement, which was expressed in terms too unqualified—it will not specifically enforce the agreement.' " [*Edwards v. Trinity B. V. Ry. Co.*, 54 Tex.Civ.App. 334, 118 S.W. 572, 576 (1909, writ refused), quoting 2 Pomeroy on Equitable Jurisprudence, Sec. 791.]

■ Under the circumstances presented the trial court may have determined that it would have been inequitable to compel specific performance. In *Riggins v. Trickey*, 46 Tex.Civ.App. 569, 102 S.W. 918, 920 (1907, writ ref.), it is stated:

"A suit to compel specific performance of a contract falls under the exclusive jurisdiction of a court of equity, and must be governed by the same general rules which prevail in the administration of all equitable remedies. The right to the remedy depends upon certain conditions, elements, and incidents, such as that the contract must be reasonably certain, unambiguous, and based upon a valuable consideration; it must be perfectly fair in all its parts, free from any misrepresentation, misapprehension, fraud, mistake, imposition, or surprise; and the situation of the parties must be such that specific performance will not be harsh or oppressive. . . . The burden rested upon appellant to show that, under the circumstances, specific performance would be just and equitable, and that it would not be hard and oppressive on appellee. The court did not abuse the discretion that

rests with a court of equity in such cases, in refusing to compel specific performance of the contract."

■ It is further apparent that material alterations were made in the terms of the earnest money agreement after its execution by the Stephensons. Generally speaking, a material alteration in a written instrument made by one of the parties after its execution and without the consent of the other avoids the instrument and extinguishes the liability of the non-consenting party. *Bowser v. Cole*, 74 Tex. 222, 11 S.W. 1131 (1889); *Baldwin v. Haskell National Bank*, 104 Tex. 122, 133 S.W. 864 (1911).

■ In the instant case appellant, Mr. Laughlin, testified that the alterations made in the contract after its execution were done at the request of Mr. Stephenson and as an accommodation to him. Mr. Stephenson denied that he had given his consent to such alterations. The trial court was at liberty to accept Mr. Stephenson's version of the matter and to reject Mr. Laughlin's. In the absence of findings of fact and conclusions of law, it may be assumed in support of the judgment that the trial court impliedly found against Mr. Laughlin's contention that the alterations had been made in good faith and with Mr. Stephenson's consent. Upon such implied finding, the trial court's judgment denying specific performance of the contract was not an abuse of its discretion. *Lowe v. Henson*, 190 S.W.2d 423 (Tex.Civ.App.— Amarillo 1945, no writ); *Pope v. Taliaferro*, 51 Tex.Civ.App. 217, 115 S.W. 309 (1908, no writ).

Although the record is not completely clear on the point, it appears that at the time of trial the Stephensons had not acquired the legal title to the property and that title had been taken in the name of a Mrs. Beavers, a friend of Mrs. Stephenson. Mrs. Beavers was not made a party to the action and it is questionable whether relief by specific performance could have been decreed against the Stephensons while the

legal title rested in a third party. See 81 C.J.S. Specific Performance §§ 16–17, p. 442; *Clifton v. Charles*, 53 Tex.Civ.App. 448, 116 S.W. 120 (1909, writ ref'd); *Jones v. English*, 235 S.W.2d 238 (Tex.Civ.App.— San Antonio, 1950, writ dism'd). However, in view of our holding that the trial court's judgment may be supported upon the grounds discussed, we do not consider this question.

The judgment of the trial court is affirmed.