Robert E. HORNER, Plaintiff-Appellant,

v.

Richard L. BOURLAND and Barbara Jane Bourland, Defendants-Appellees.

No. 83–1360
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1984.

Martin & Thomas, Mexia, Tex., Michael Thomas, W. James Kronzer, Houston, Tex., for plaintiff-appellant.

Brown, Herman, Scott, Dean & Miles, James T. Blanton, Fort Worth, Tex., for defendants-appellees.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

RANDALL, Circuit Judge:

The plaintiff brought this diversity action to compel the specific performance of a contract for the sale of real estate. After a bench trial, the district court rendered judgment for the defendants, and the plaintiff timely appealed. For the reasons set forth below, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

On January 13, 1979, the plaintiff, Robert Horner, as buyer and the defendants, Richard and Barbara Jane Bourland, as sellers entered into a contract for the sale of the El Lago Mobile Home Park for the amount

of $570,700. The contract provided that the purchase price would be paid as follows:

> $455,700.00. By Seller recasting the present First Deed of Trust of Record in said amount, amortized over a period of 32½ years, payable in an approximate amount of $3,472.92 per month including interest at a rate of 8½% per annum, with FHA, and Buyer's assumption of same.
>
> $115,000.00. By Buyer executing a Promissory Note, in favor of Seller, secured by a Second Deed of Trust. . . .

Record Vol. I at 5. It developed subsequently that "recasting" (essentially, refinancing) the loan with the FHA was impossible. The Bourlands had fallen behind in their payments and owed delinquent interest; the FHA will not recast delinquent interest with principal. Nor would the FHA permit a second lien on property on which it had a first lien. Horner thereafter submitted various proposed escrow instructions to the Bourlands, none of which were agreed to by the parties.

Horner filed this suit for specific performance of the contract on May 7, 1979. On May 18, 1979, in a telephone conversation that, unbeknownst to Bourland, was being tape recorded by Horner, Horner offered to pay the full purchase price of $570,700 in cash. Bourland demurred, and now contends that such a cash payment would cause him to suffer adverse tax consequences.

At the conclusion of the trial, the district court found for the Bourlands, holding that the parties had entered into the contract under the mutually mistaken belief that the Bourlands' FHA loan could be recast, and that this mutual mistake precluded enforcement of the contract. The court held further that because enforcement of the contract as written was impossible, its enforcement would require the court to rewrite the contract for the parties, which is impermissible. The court also found that Horner's proposed escrow instructions materially altered the terms of the contract and constituted counter offers; and that Horner

made no written cash offer for the property.

## II. THE STANDARD OF REVIEW.

■ As a preliminary matter we note that because the district court's findings of fact are not challenged by the parties, our review focuses on the court's conclusions of law, which resulted in its denial of specific performance. Our review of these rulings is plenary; we are free to examine them and reach our own conclusions. *See, e.g., Sierra Club v. Sigler,* 695 F.2d 957, 967 (5th Cir.1983).

■ The parties correctly point out that in general, a decree for specific performance is not a matter of right, but is a matter resting in the court's judicial discretion. *See, e.g., Kress v. Soules,* 152 Tex. 595, 261 S.W.2d 703, 704 (1953); *Nash v. Conatser,* 410 S.W.2d 512, 519 (Tex.Civ.App. —Dallas 1966, no writ). Nonetheless, in the proper circumstances the standard set forth by the Texas Supreme Court in *Bennett v. Copeland,* 149 Tex. 474, 235 S.W.2d 605 (1951), is applicable:

> "Mere hardship is not sufficient ground for denial of the right to specific performance of a contract otherwise subject to enforcement. * * * Especially where it was fairly and voluntarily assumed as part of a contract. * * * In this respect a contract for the sale of land will be enforced as a matter of right, regardless of its wisdom or folly, if fairly and understandingly made. * * * [C]ourts cannot arbitrarily refuse specific performance of a contract, because they deem it unwise, or because subsequent events disclose that it will result in a loss to defendant; but to justify the refusal of this relief it must appear that the defendant had been misled and overreached to such an extent that the contract is unconscionable."

235 S.W.2d at 609 (quoting Annot., 65 A.L.R. 1st 75); *accord Kress v. Soules, supra* (determination must be according to facts of individual case; grant of specific performance must not operate inequitably on defendant). In a case involving a contract for the sale of real estate that is

otherwise subject to enforcement and where justification on the ground of inequity is lacking, it is an abuse of the trial court's discretion to refuse specific performance.

## III. ISSUES ON APPEAL.

### A. Mutual Mistake.

It is not contested that the parties were mutually mistaken in their assumption that the Bourlands' FHA loan could be recast. However, not every instance of mutual mistake suffices to render a contract unenforceable. Under Texas law, "[a] mutual mistake of fact ... occurs when both parties to a transaction have '... a belief in the present existence of a thing, material to the transaction, that does not exist'.... An act done or a contract made under a mistake of material fact is avoidable...." *Turberville v. Upper Valley Farms, Inc.*, 616 S.W.2d 676, 678 (Tex.Civ.App.—Corpus Christi 1981, no writ); *see also Volpe v. Schlobohm*, 614 S.W.2d 615, 617–18 (Tex. Civ.App.—Texarkana 1981, no writ). Whether a given matter is material, therefore, is the relevant inquiry in a case involving mutual mistake.

In the case at hand, we do not agree with the district court's implicit conclusion that the parties' mutual mistake was material.[1] The materiality standard was set forth recently as follows:

> [Mutual] mistake must relate to the subject matter of the contract involved and not to a matter that is collateral or incidental to that contract. To enable a party to a written contract to be relieved from liability thereunder on the ground of mutual mistake ... the mistake must involve the subject matter of the contract and the substance thereof.

*Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 870 (Tex.Civ.App.—San Antonio 1980, no writ). Thus, a mistake that goes "to the essence of the enforcement of

legal obligations" is sufficiently material to the contract to provide grounds for its rescission. *Plains Cotton Cooperative Association v. Wolfe*, 553 S.W.2d 800, 805 (Tex. Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *cf. Simpson v. Simpson*, 387 S.W.2d 717, 719 (Tex.Civ.App.—Eastland 1965, no writ) (rescission appropriate only when "the parties contracted under a mistake of fact that was material and essential to an understanding of the consequences of the agreement, and [when] the mistake did not relate to a mere incident thereto"). We do not think that the mistake before us meets this standard. In this case, a cash tender in lieu of financing or assumption did not go the essence of the parties' agreement, but affects only a matter collateral to the transfer of the real estate.

Our determination of this issue, moreover, finds ample support in *Advance Components, Inc. v. Goodstein*, 608 S.W.2d 737 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r. e.). There, as here, the plaintiff sought the specific performance of a contract to sell real estate. The contract in question included a provision that the buyer would assume a promissory note held by a certain bank. Such an assumption proved to be impossible, whereupon the buyer arranged full financing elsewhere. The seller then sought to avoid the contract, contending that the proposed cash payment rather than assumption of the note would cause him to suffer adverse tax consequences. The court granted specific performance, holding that "the plaintiff's breach was not so material as to defeat its action," and looked to the following factors to determine materiality:

> a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;
>
> b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;
>
> c) The extent to which the party failing to perform has already partly performed

---

1. Our disposition of this issue renders it unnecessary for us to reach the district court's conclusion that Horner's proposed escrow instructions materially altered the contract and constituted counter offers. Counter offers are rele-

vant to the formation of a contract. Because we find that the contract in this case was not rendered void as a result of the parties' mutual mistake, its validity and binding effect was not affected by the escrow instructions.

or made preparations for performance. . . .

*Id.* at 740.[2] In that case, the court found that a cash payment would bestow upon the seller the substantial benefit for which it had contracted, and that any adverse tax consequences suffered by the seller as a result of the different method of payment was compensable in damages. *Id.* at 740.

*Advance Components* is consistent, moreover, with other Texas cases finding that a cash offer in lieu of contractually specified financing provisions constitutes substantial compliance with the contract. In *Renouf v. Martini,* 577 S.W.2d 803 (Tex.Civ.App.— Houston 1979, no writ), the court granted specific performance of a contract for the sale of real estate where the buyer was unable to secure the financing pursuant to the terms provided for in the contract and instead arranged full cash financing. *Accord Smith v. Nash,* 571 S.W.2d 372 (Tex. Civ.App.—Texarkana 1978, no writ).

We think that these cases are dispositive of the instant appeal. Applying the *Advance Components* analysis to the case before us, we think it is clear that no inequity would result from a grant of specific performance. A cash payment would bestow upon the Bourlands substantially the equivalent benefit—the assumption, in either the legal or common usage of the term, of the FHA loan coupled with a return of equity— for which they contracted. Moreover, any adverse tax consequences incurred by the defendants as a result of a cash payment may be compensated, upon the payment of which the decree should be conditioned. *See Advance Components, supra.*

The defendants argue that strict compliance with the contract was required, and that the parties' mutual mistake precludes such compliance, thus rendering the contract unenforceable. We do not agree that Texas law demands such strict compliance. Nor do the cases that the defendants rely on compel a different conclusion; rather, we find them to be supportive of the plaintiff's position. In *Nash v. Conatser, supra,* the court denied specific performance of a contract to sell real estate because the contract in question, which lacked a description of the property, did not possess the requisite attributes of a legally binding agreement. In discussing the remedy of specific performance, the court stated that "[a]s a general rule specific performance of a contract will not be decreed unless it can be completely enforced so as to secure substantially all that the parties contemplated at the time the contract was made." 410 S.W.2d at 520. Substantial rather than strict compliance, therefore, is what is required.[3]

*Kitten v. Vaughn,* 397 S.W.2d 530 (Tex. Civ.App.—Austin 1965, no writ), a case heavily relied upon by the defendants and the district court, is somewhat more problematic. There, the parties had agreed that the sale was conditioned on the buyer obtaining a $160,000 loan at a specified rate of interest. The buyer was unable to secure such a loan, but did obtain a commitment in the amount of $100,000. The seller offered to accept the proceeds of that loan plus "[a] second vendor's lien note upon such terms at such rate of interest and for such amount as would be, when coupled with the [terms of] the first lien note," equal to the contingent provision in the contract. The buyer

---

**2.** Other factors that the court set forth but were not considered relevant in that case included the relative degree of hardship the parties would suffer; wilful or negligent behavior by the buyer; and certainty or the lack thereof that the decree would result in actual performance. 608 S.W.2d at 740 (citing Restatement of Contracts § 275). The instant case, likewise, does not compel consideration of these factors.

**3.** The defendants also urge that *Laughlin v. Stephenson,* 525 S.W.2d 308 (Tex.Civ.App.— Houston 1975, no writ), supports their position.

We do not agree. *Laughlin* involved a unilateral mistake on the part of the seller, who signed a contract containing a sales commission term that he did not notice and would not have agreed to if he had. Upon discovering the provision very shortly after executing the contract, he immediately called the buyer to rescind the deal. The court held that rescission was proper in these circumstances, and that to impose specific performance would be inequitable. *Id.* at 311. The instant case does not present such a situation.

declined to accept this offer. In denying specific performance, the court held that "[o]ne first lien note and one lender for $160,000 is not substantially the equivalent of one first lien note for $100,000 payable to A and one second lien note for $60,000 payable to B. It is to be noted that [the sellers] did not offer to finance the entire $160,000." *Id.* at 533. The court held, therefore, that the seller's proposal constituted an impermissible attempt "unilaterally to rewrite" the contract.

We think *Kitten* is factually distinguishable from the instant case, and that Horner's cash offer was not the kind of unilateral action deemed unacceptable in *Kitten.* The court in *Kitten* was concerned that one party to the contract not be permitted unilaterally to impose new and additional obligations, not previously contemplated by the other party. The instant case does not present such a situation. Here, a full cash payment presumably would relieve the Bourlands of *all* obligations with regard to the property, rather than alter or increase their liability under the terms of the original contract. However, despite the factual variations between *Kitten* and *Advance Components,* the two Texas appellate courts that decided those cases apparently differ in their views of substantive materiality with regard to forms of payment. To the extent that these views may be inconsistent, we believe that the factual similarities between the case before us and *Advance Components* render the latter more applicable than *Kitten.* Moreover, we believe that the *Advance Components* analysis, applied to the instant case, yields the better result.

The defendants contend further that *Advance Components, Smith v. Nash,* and *Renouf, supra,* are distinguishable because each of them involved "firm, definite, and written 'cash' offers for payment of the purchase price." Brief for Appellees at 12. We do not find this contention persuasive. While *Renouf* involved a written cash offer, it is unclear whether the offers in *Advance Components* and *Smith v. Nash* were written or oral; moreover, in none of these cases did the court's analysis rest on this basis. Rather, Texas law does not appear to require that such an offer be in writing; [4] nor is it required that an actual tender of the cash be made. *See, e.g., Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141 (1947); *Renouf v. Martini, supra.* The buyer's assertion to the seller and in his pleadings that he is ready, willing, and able to pay cash is sufficient. In the instant case, the conversation between Horner and Richard Bourland on May 18, 1979, evidences an assertion of readiness and ability to pay,[5] as does Horner's affidavit submitted to the district court on June 2, 1980. *See Record* Vol. I at 35–36. Although the Bourlands argue on appeal that Horner failed to "show the Court that he had made financing arrangements to acquire the cash or actually had the same in his possession," Brief for Appellees at 11, we do not think that any such showing is required. *See Burford v. Pounders, supra.*

### B. The Statute of Frauds.

On appeal, the Bourlands contend that Horner made no written offer complying with the Statute of Frauds.[6] The district

---

4. *See* discussion at part II(B), *infra.*

5. That conversation included the following exchange:

 Horner: [I]f necessary we will give you the whole five hundred and seventy thousand cash for it and then that just alleviates any uh, refinancing or anything, doesn't it.

 Bourland: Well, of course that was never brought up before.

 Horner: Uh-huh, you see we can do that too, so it doesn't really make any difference which way, whether we assume [the loan] or not. We will probably end up cashing out FHA anyways....

Record Vol. I at 124.

6. Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1982 Supp.) provides:

 (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or memorandum of it, is

 (1) in writing; and

 (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

 (b) Subsection (a) of this section applies to

 \* \* \* \* \* \*

court found that there had been no written offer of cash, but drew no legal conclusion from this finding. We have already discussed the fact that there is no requirement that an offer be in writing to be considered bona fide. *See, e.g., Advance Components, supra.* To the extent that the court's finding implicates the Statute of Frauds, moreover, we do not agree that it was violated by Horner's oral offer.

Under Texas law, the Statute of Frauds does not require that the consideration in a contract for the sale of real estate be stated in writing. *See Botello v. Misener-Collins Co.,* 469 S.W.2d 793 (Tex.1971). Similarly, not every oral modification of the terms of a written contract falls within the prohibition of the Statute of Frauds. In *Garcia v. Karam,* 154 Tex. 240, 276 S.W.2d 255 (1955), the Texas Supreme Court delineated the standard to be employed in determining whether a given oral modification is permissible:

> [W]e should look to the written contract before modification and to the character of the modification itself. If neither the portion of the written contract affected by the subsequent modification nor the matter encompassed by the modification itself is required by the Statute of Frauds to be in writing, then the oral modification will not render the contract unenforceable.

276 S.W.2d at 257. In that case, the oral modification in question purported to rescind a contract term calling for an inventory of the merchandise to be sold. In finding that this modification did not violate the Statute of Frauds, the court held that "the modification did not constitute a change in the character or value of the consideration originally contracted for.... The subject matter of the contract has not been changed, but only the method of performing it." *Id. See also Gulf Production Co. v. Continental Oil Co.,* 139 Tex. 183, 164 S.W.2d 488, 491 (1942) ("the parties to a contract ... may lawfully change the manner of payment, and waive strict performance of the method of payment, without

(4) a contract for the sale of real es-

violating the Statute of Frauds"); *Vendig v. Traylor,* 604 S.W.2d 424 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) (oral modification enforceable only if it does not materially alter obligations imposed by original contract); *Toland v. Azton,* 553 S.W.2d 433, 434 (Tex.Civ.App.—San Antonio 1977, no writ) (method of payment in real estate contract can be orally modified; change in interest rate therefore permissible); *Smith v. Hues,* 540 S.W.2d 485, 490 (Tex.Civ.App.—Houston 1976, writ ref'd n.r.e.) (deposit of earnest money with escrow agent other than that contractually specified not prohibited by Statute of Frauds); *Manning v. Barnard,* 277 S.W.2d 160, 165 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.) (oral change in medium or manner of payment does not violate Statute of Frauds).

Cases illustrating the nature of impermissible oral modifications include *Foster v. Mutual Savings Association,* 602 S.W.2d 98 (Tex.Civ.App.—Fort Worth 1980, no writ). There, the change would have modified the existing agreement with regard to "the percentage of interest to be paid, the amounts of the installments, the security rights ... including [the] right to foreclose, the terms of the remaining balance of the loan, the amount of monthly payments, the date of the first payment, the interest rate, [and] the amount to be paid monthly for taxes and insurance." *Id.* at 100. Thus, the court denied enforcement of the oral modification, concluding that it effected a "material modification" of the existing contract and was forbidden by the Statute of Frauds. *Accord Zeluff v. Ekman,* 386 S.W.2d 838 (Tex.Civ.App.—Houston 1965, no writ).

Clearly, the instant case does not present such a situation. The oral modification of the contract—the cash offer—did not constitute such a "material alteration" of the original deal. Employing the analysis set forth in *Garcia,* we note that before its modification, the contract essentially called for the transfer of ownership of the property, and for the Bourlands to be re-

tate....

lieved of and for Horner to assume liability on their loan. The oral modification does not alter this result. Moreover, because the contract term affected by the subsequent modification was not itself required to be in writing, that the offer was oral does not render it unenforceable.[7]

## IV. CONCLUSION.

In summary, we hold that, in the circumstances of this case, the district court abused its discretion in denying the plaintiff specific performance of the parties' contract to sell real estate. While this remedy is not necessarily a matter of right, our determination that Horner's cash offer did not materially breach the parties' agreement, and was not violative of the Statute of Frauds, justifies its imposition in this case. To the extent that the defendants can show that they are adversely affected by a decree of specific performance, they may be compensated therefor. The district court is directed to make findings on this issue, holding a hearing if necessary, and should condition its decree of specific performance on payment of any tax differential to the Bourlands.

The case is REVERSED and REMANDED for proceedings consistent with this opinion.

---

**7.** To the extent that there are Texas cases seemingly contrary to our conclusion, *see, e.g., Redman v. Whitney,* 541 S.W.2d 889 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.), we note that we have considered them and are persuaded by those we discuss in text. Certainly the import of *Garcia* is clear. Nor is our deter-mination inconsistent with *Robertson v. Melton,* 131 Tex. 325, 115 S.W.2d 624 (1938), where the court found impermissible the oral modification of a contract term required by the Statute of Frauds to be in writing. 115 S.W.2d at 627.