**SCENIC GALVESTON, INC.**

v.

**INFINITY OUTDOOR, INC.**

No. Civ.A. G–00–751.

United States District Court,
S.D. Texas,
Galveston Division.

July 24, 2001.

Timothy A Beeton, Simpson Beeton et al, Galveston, TX, for Scenic Galveston, Inc., plaintiff.

Richard Lee Rothfelder, Rothfelder and Falick, Houston, TX, for Infinity Outdoor, Inc. fka Outdoor Systems, Inc., defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff brings this declaratory judgment action seeking a determination that Defendant exercised its right under a billboard contract to terminate the agreement. Now before the Court is Plaintiff's Motion for Summary Judgment. For the reasons stated below, Plaintiff's Motion is **GRANTED.**

### I. BACKGROUND

Plaintiff is the owner of land, along Interstate 45, on which Defendant was allowed, by lease, to maintain billboards. Under the terms of the lease, Defendant, the tenant, was allowed to maintain up to eight billboards on Plaintiff's, the landlord, property. In return, Defendant paid $ 495.00 per month in rent. The lease, which was entered into in 1993, had a forty-year term. Both Plaintiff and Defendant are successors in interest to the original parties to the lease, J.J. and E.S. Tamburine (landlord) and Jules Lauve Jr., Inc. (tenant).

Plaintiff brings this declaratory judgment action seeking a judicial determination that Defendant exercised its right under the lease contract to terminate the lease. The lease provides in relevant part:

If at any time the advertising structures of the Tenant on the premises hereby leased are entirely or partially obscured or destroyed without fault on the part of the Landlord, or if Tenant be prevented by authorities having jurisdiction, or by adjacent property owners or persons in charge thereof, from constructing or maintaining its advertising structures, this agreement shall· terminate at the option of the Tenant ...

Prior to the Defendant's acquisition of its interest in the lease, two of the eight billboards were lost to storms. All of the billboards were non-conforming and hence could not be rebuilt under state law. In the summer of 2000, after Defendant had acquired its interest in the lease, a third billboard was lost due to the action of a state agency. Consequently, Defendant sent a letter to Plaintiff on August 24, 2000 stating "we are hereby terminating our lease with you and no future rent payments will be made." Plaintiff contends that by sending this letter, Defendant exercised its option to terminate the lease. Defendant claims, however, that it only intended to partially terminate the lease and pay a prorated portion of the rent for the remaining five billboards. As evidence of this intent, Defendant points out that on September 1, 2000, Defendant tendered a rent payment of $ 412.50, a one-sixth reduction from the prior amount of $ 495.00. Plaintiff deposited the check. Defendant also tendered the same amount on October 1, 2000, and Plaintiff deposited this check as well. Yet, on October 4, 2000, Plaintiff

sent a letter to Defendant stating that Defendant's August 24, 2000 letter terminated the lease in its entirety, and Plaintiff refunded the rent payments.

Plaintiff argues that it properly took Defendant's letter to constitute an exercise of Defendant's termination right. It argues in the alternative that even absent Defendant's letter, Defendant's payment of a lesser amount constituted a breach of the lease, entitling Plaintiff to rescind.[1]

Defendant argues that its letter indicated an intention to partially terminate the lease. It argues that industry custom, as well as the subsequent course of conduct—payment of a lesser amount and acceptance thereof by Plaintiff—demonstrates that it did not intend to completely terminate the lease. Defendant also argues that even if it was not allowed, under the terms of the lease, to partially terminate, Plaintiff should be allowed to recover only the deficiency in rent payment, not rescind the lease. Finally, Defendant argues that Plaintiff's aim as a nonprofit organization is the elimination of billboards in Galveston. In that regard, Defendant provides evidence that Plaintiff took an active role in the state agency action which resulted in the loss of the third billboard and hence knew that only one billboard was lost.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts

---

1. Plaintiff raised this argument in its Complaint, but not in its Motion for Summary Judgment.

showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See*

*Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## III. ANALYSIS

The parties agree that Texas law governs this contract dispute. Under Texas law, the language used by parties to a contract should be accorded a plain grammatical meaning, unless it definitely appears the intention of the parties would thereby be defeated. *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985). If the contract is worded so that it can be given a certain and definite meaning or interpretation, it is not ambiguous, and therefore a court should construe the contract as a matter of law. *See United States v. Fidelity & Deposit Co.*, 10 F.3d 1150, 1152 (5th Cir.1994) (holding that if the contract can be given a definite and certain meaning or interpretation, the contract is not ambiguous and will be construed by the Court as a matter of law); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983) (mandating that unambiguous provisions appearing in a contract must be given the plain meaning of their terms); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968) (noting that absent ambiguity, "the construction of the written instrument is a question of law for the Court"). Consequently, a fact issue arises as to the proper interpretation of a written contract only if the contract is ambiguous. *In re Fender*, 12 F.3d 480, 489 (5th Cir. 1994). An agreement, however, is not ambiguous merely because the parties dis-

agree upon its correct interpretation; rather, it is ambiguous only if both competing interpretations offered are reasonable. *See D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir.1992) (applying Texas law). In this case, neither party argues that the lease agreement is ambiguous, although both put forth different interpretations. The Court finds that the clauses at issue are susceptible to only one reasonable interpretation, and therefore the Court must review the contract as a matter of law. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex.1998) (commenting that a contract is not ambiguous merely because the parties advance conflicting interpretations). In addition, because the agreement is not ambiguous, the Court may not consider industry custom. *See Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 132–33 (Tex.App.—Houston [14th Dist.] 2000, pet. dism'd).

■ Because the lease provision at issue in this case contains no ambiguity, it therefore must be construed in accordance with its plain meaning. From a plain reading of the contractual provision upon which both parties rely, it is clear that Defendant did not have the right to partially terminate the contract. The lease stated that in the event of an entire or partial loss of use, the agreement would terminate at the option of the tenant. The contract does not distinguish between total and partial termination, though the drafters clearly knew how to make such a distinction, having made the distinction with regard to the loss of use. Thus, the only reasonable interpretation is that Defendant could terminate the contract only in its entirety. In addition, if the contract was to allow of partial termination, it presumably would have included a clause discussing proration of rent.

■ In light of the foregoing contractual interpretation, the evidence conclusively establishes that Defendant effected a complete termination of the contract. Whether Defendant exercised its option to terminate the lease in its entirety is determined by considering the objective manifestations of Defendant's intent, not Defendant's actual subjective intent. *Cf. Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 717 (Tex.App.—Houston [1st Dist.] 1988 writ denied); *Ludlow v. DeBerry*, 959 S.W.2d 265, 272 (Tex.App.—Houston [14th Dist.] 1997, no writ) (both noting that a court looks to the parties' objective manifestations of intent to determine if an agreement was created). Although Defendant may have subjectively intended only to effect a partial termination, the letter it sent Plaintiff stated unequivocally that Defendant was terminating the contract, with no qualification whatsoever. It stated, "we are hereby terminating our lease with you and no future rent will be paid." This letter admits of only one reasonable interpretation—that Defendant intended to completely terminate the contract. Moreover, the lease gives the Defendant the unilateral power to terminate the lease upon the happening of a condition subsequent—the loss of use of one or more of the billboards. Therefore, Defendant's letter of August 24, 2000 was not an offer to rescind the lease requiring acceptance by the Plaintiff. The lease was terminated at the moment Plaintiff received the letter (or perhaps at the moment it was mailed). *Rigsby v. Boone County State Bank of Lebanon, Ind.*, 241 S.W. 207, 212 (Tex.Civ.App.—Amarillo 1922, no writ) ("if [a party], by contract, was given an option to rescind, when he exercised the option and notified the other party of such fact, the contract then was at an end by the agreement of the parties, and it did not require

any further consent or acquiescence of the other party.").

■ Moreover, no action on the part of either Plaintiff or Defendant revived or resurrected the terminated contract. Defendant attempts to muddy the waters by noting that it tendered two prorated rent payments which were accepted by Plaintiff. Defendant is arguing in essence that the parties' course of conduct constituted a renegotiation or modification of lease. These actions, however, could not have served to modify the contract even if it had not been terminated. Texas law is clear that for a contractual modification to be effective, "it must satisfy the elements of a contract: a meeting of the minds supported by consideration." *Hathaway v. General Mills Inc.*, 711 S.W.2d 227, 228 (Tex.1986); *Rhoads Drilling Co. v. Allred*, 123 Tex. 229, 70 S.W.2d 576, 583 (1934). It follows that if the original contract was subject to the statute of frauds, any modification materially affecting the character or value of the underlying agreement would have to be in writing as well. *See Garcia v. Karam*, 154 Tex. 240, 276 S.W.2d 255, 257 (1955); *Vendig v. Traylor*, 604 S.W.2d 424, 427 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *see also Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984). As the Texas Supreme Court once eloquently put it:

> The rule is that parties to a written contract coming within the statute of frauds may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol, the reason for the rule being that, when such an alteration is made, part of the contract has to be proven by parol evidence, and the contract is thus exposed to all the evils which the statute was intended to remedy.

*Robertson v. Melton*, 131 Tex. 325, 115 S.W.2d 624, 626–27 (1938).

■ In this case, the parties had a contract clearly required to be in writing, a forty-year lease for an interest in property. Tex.Bus. & Com.Code § 26.01(b)(5) (applying the writing requirement to a lease of real estate for a term longer than one year). Moreover, the purported modification, a one-sixth reduction in the amount of rent to be paid, materially affects the value of the contract. *See Parrish v. Haynes*, 62 F.2d 105, 106–07 (5th Cir.1932) (holding that a parol modification of a lease having two years to run, reducing the amount of rent was unenforceable under the statute of frauds). Thus, such a modification would have to have been in writing to be enforceable. It was not. Had Defendant's checks contained language to the effect that deposit indicates acceptance of a modification of the original lease agreement, perhaps then a valid modification or new contract could have been created. *Cf. Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 16 (Tex. App.—San Antonio 1998, no pet.) (finding that release language on the back of a check was sufficiently conspicuous to provide notice and hence lead to an agreement). The simple tendering of a prorated rent payment and deposit thereof could not have served to modify the contract.[2] It follows *a fortiori* that these action could not have resurrected the dead contract.

■ Finally, despite Defendant's suggestion, Plaintiff's status as an organization devoted to the elimination of bill-

---

**2.** Moreover, in any organization of reasonable size, the person in charge of handling such matters as rent payments will not be directly aware of decisions made on the executive level. Most likely, the checks were cashed accidently. This is further confirmed by the fact that Plaintiff refunded the rent payments once it became aware of their existence.

boards has no relevance whatsoever to the analysis. Defendant brings forth evidence that Plaintiff took an active role in the state proceedings which lead to the elimination of the third billboard. It argues that based on this evidence it was clear to Plaintiff that only one billboard was lost and hence it was unreasonable for Plaintiff to conclude that Defendant intended to terminate the entire lease. The lease however, as noted above, allowed for termination of the lease for the entire *or partial* loss of use of billboards. If the Court were to accept Defendant's argument, then it would follow that the lease itself was unreasonable insofar as it explicitly allows termination for partial loss of use. Instead, the Court finds that it was perfectly reasonable for Plaintiff to conclude, from Defendant's unambiguous letter, that though it only lost one billboard, Defendant had decided, for whatever reason, to terminate the entire contract and set up its billboards elsewhere.

Based on the foregoing, the Court finds that Plaintiff has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Thus, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **GRANTED.** Concurrent herewith, the Court will enter a Final Judgment in the matter. Each side is to bear its own costs in the matter incurred herein to date.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued this date, Plaintiff's Motion for Summary Judgment is hereby **GRANTED** and Judgment is entered for Plaintiff. All parties are **ORDERED** to bear their own

costs and attorney's fees incurred herein to date. **THIS IS A FINAL JUDGMENT.**

   **IT IS SO ORDERED.**