Lee D. **VENDIG**, Appellant,

v.

Charles R. **TRAYLOR**, Jr., et al., Appellees.

No. 20318.

Court of Civil Appeals of Texas, Dallas.

July 30, 1980.

Rehearing Denied Aug. 20, 1980.

Donald W. Davis, Collie, McSpedden, Robert & Davis, Dallas, for appellant.

Willis E. Kuhn, Moore & Peterson, Dallas, for appellees.

Before AKIN, CARVER and STOREY, JJ.

AKIN, Justice.

This is an appeal from a summary judgment granted the defendant in a suit for breach of a land sale contract. Plaintiff sued on three separate theories: contract, fraud and the Deceptive Trade Practices Act. Because plaintiff's testimony of an oral modification of the written contract is barred by the Statute of Frauds, we affirm as to the contract theory of recovery. As to the fraud and Deceptive Trade Practice Act theories, we reverse because they were not "expressly presented" to the trial court in the motion for summary judgment.

This suit concerns two lots, upon each of which exists a house, referred to as "18A" and "18B", and owned by appellee Traylor. El Centro Savings & Loan Association held mortgages on both lots to secure interim loans that financed the construction of the houses. Because of Traylor's inability to make payments on the loans to El Centro, both lots were posted for foreclosure on September 5, 1978. Traylor contracted to sell lot 18B to Vendig upon the condition that Vendig obtained financing by August 18, 1978. That date was later changed in writing to August 28, with both parties initialing the change. Appellant Vendig asserts that a subsequent oral modification extended the time for obtaining financing until September 1. Vendig alleges that he obtained the financing by September 1, but that Traylor advised him at that time that he would only sell Lot 18B if Traylor would also purchase or finance Lot 18A. Vendig refused to purchase both lots. Traylor subsequently sold both lots to a third party prior to the September 5th date set for the foreclosure sale.

Vendig then instituted this action for damages for breach of contract, fraud, and violations of the Deceptive Trade Practice Act. Traylor moved for summary judgment on the ground that Vendig's right to purchase the property terminated on August 28 because Vendig had not obtained a commitment for permanent financing on that date as required by the terms of the written contract. The trial court granted the motion on the ground that Vendig's testimony as to the oral extension was barred by the Statute of Frauds and thus the testimony did not raise a fact issue as to an extension of the time for fulfilling the financing contingency. Consequently, the trial court held that Vendig's right to purchase the property terminated on August 28, 1978, as provided by the terms of the written agreement. From this judgment, Vendig appeals.

*Contract Action*

Vendig admits that he had not fulfilled the financing contingency by August 28,

but he argues that the oral agreement between him and Traylor that he would have until September 1 to obtain a loan commitment to finance the purchase of "lot 18B," raises a fact issue as to an oral modification of the written agreement. We cannot agree that this oral modification precludes summary judgment. We hold that the requirement that financing be obtained by August 28, was a material provision of the written land sale contract, and thus testimony of a subsequent oral modification of that provision is barred by the Statute of Frauds.

■ Contracts for the sale of land in Texas must be written to be enforceable. Tex.Bus. & Com.Code Ann. § 26.01 (Vernon Supp.1980). However, not all modifications of such contracts need be in writing. After reviewing the authorities on this question, we conclude that an oral modification of a written contract is enforceable under the Statute of Frauds only if the modification does not *materially* alter the obligations imposed by the underlying agreement.

The alteration of the underlying obligation as affecting enforceability of an oral modification under the Statute of Frauds is analyzed in detail in *Dracopoulas v. Rachal,* 411 S.W.2d 719 (Tex.1967). There the court considered the Statute of Frauds provision of the Real Estate License Act, which requires that agreements for a commission for the sale of land be written. Tex.Rev. Civ.Stat.Ann. art. 6573a, § 28 (Vernon 1969). The court noted the general rule that the time for performance can be extended by an oral agreement, but held that an agreement, providing for a realtor's commission if a home is sold within a ninety day period, may not be orally extended for an indefinite time. The court reasoned that the rights and obligations created by the written contract required the broker to find a buyer within 90 days in order to earn his commission and allowed the home owner to find his own buyer after the 90 day period, without incurring liability for the commission. Thus an indefinite extension of the 90 day contract period materially affected the broker's right to a commission and was

unenforceable because it was not written. *Id.* at 722. This rule is consistent with a very early decision holding that the time for performance of a written agreement may be modified orally but where the terms of the extension differ so much as to make the modification an entirely new contract, the oral modification is unenforceable under the Statute of Frauds. *Bullis v. Noyes,* 75 Tex. 540, 12 S.W. 397 (1889). Thus we conclude that where a contract is required to be written under the Statute of Frauds, an oral modification is enforceable only where there is no material alteration of the obligation underlying the contract. *Smith v. Hues,* 540 S.W.2d 485, 490 (Tex.Civ.App.– Houston [14th Dist.] 1976, writ ref'd n. r. e.); *Grayson Enterprises, Inc. v. Texas Key Broadcasters, Inc.,* 390 S.W.2d 346, 352 (Tex.Civ.App.–Eastland 1965, writ dism'd).

■ In order to determine whether the modification is a material alteration of the written obligation, we must examine the contract as in *Dracopoulas.* In construing a contract we examine it in light of the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to, and contemporaneous with, the making of the integration, excluding oral statements of the parties as to what they intended it to mean. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex. Civ.App.–1968). The written agreement in this case was signed by the parties on August 13, 1978, and provided for closing on September 1, 1978. The contract, a printed form, was subject to the purchaser obtaining financing on terms acceptable to the purchaser and gave seller the right to terminate the contract if purchaser did not secure a loan approval within 15 days. Loan approval was to be evidenced by a commitment letter to the purchaser from a lending institution delivered, on or before noon, August 18, 1978. A typed provision at the end of the printed terms provided that, "Purchaser to deliver commitment [leter] or release of financing contingency to title company on or before NOON 8–18–

78 or this contract shall be null and void." The parties later agreed in writing to extend Vendig's time to obtain financing until August 28. The date on the written contract was crossed through and changed to 8–28–78. The change was initialed by both parties.

The facts we consider controlling are: (1) the property was posted for a foreclosure sale on September 5; and (2) beneath the printed terms of the form contract a provision was inserted which stated that the contract would be null and void if the financing contingency was not fulfilled by August 28. The August 28 date was an integral and material part of the contract because Traylor had only until September 5 to consummate the sale. If the financing contingency was not fulfilled by August 28, the written agreement gave appellee the right to do exactly what he in fact did: find another purchaser before the September 5 date set for the foreclosure sale. In our view, fulfillment of the financing contingency by August 28 was an essential part of the underlying obligation of the contract. Because Traylor was faced with a foreclosure sale on September 5, the essence of the contract was not merely a sale, but a sale before foreclosure. Thus, it was a crucial part of the contract that it become binding, if at all, by August 28. If the financing contingency was not fulfilled, Traylor would have time to find another buyer prior to the September 5 date for the foreclosure sale. Consequently, that requirement could not be modified by an oral agreement permitted by the Statute of Frauds and the contract terminated by its express terms on August 28.

Vendig contends, nevertheless, that the financing contingency merely creates a right of termination in Traylor and in the absence of an exercise of that right, the contract creates a binding obligation on both parties. In this respect he points to the following language in the contract:

1. The Purchase price for the property is $225,000.00, Payable as follows:

   a. $225,000.00 in cash, of which $10,-000.00 is deposited herewith by Pur-

chaser with Seller, receipt of which is hereby acknowledged by Seller. Balance of the purchase price shall be paid in full at closing.

b. * FINANCING TERMS TO BE ACCEPTABLE TO PURCHASER

c. If a part of the purchase price is to be paid from the proceeds of a loan, then this contract is subject to Purchaser's obtaining of a Loan in the amount of $___*___ at prevailing terms and rates and Purchaser agrees (a) to apply for said loan within five (5) days after the date hereof, (b) to make a diligent effort to secure same, and (c) to execute all instruments required by the lending agency and/or title company in conjunction with such loan. Purchaser's failure to comply with (a), (b) or (c) herein shall constitute a default by Purchaser in the performance of his obligations under this Contract, and Seller shall be entitled either to retain Purchaser's deposit as liquidated damages or to enforce its other rights as provided herein in the event of Purchaser's default. Seller shall have the right to terminate this contract if Purchaser has not secured the required loan approval within ~~five~~ 15 (15) days after the date hereof, ON OR BEFORE NOON, 8–28–78, LOAN APPROVAL SHALL BE EVIDENCED BY A COMMITMENT LETTER FROM A LENDING INSTITUTION NAMING PURCHASER FOR LOAN APPROVAL.

This language provides that Traylor shall have the right to terminate the contract if Vendig failed to comply with its terms, which could be read as giving Traylor the right to terminate the contract, which Traylor failed to exercise. This contention is contrary to the express language of the typewritten provision of the contract which states: "Purchaser to deliver commitment [leter] or release of financing contingency to title company on or before noon 8–28–78 or this *contract shall become null and void.*" [Emphasis added]. When we read the printed provisions in connection with this language, we conclude that a loan commit-

ment by the time specified is a condition precedent to liability upon either party. Because this condition was not met, there is no binding obligation. *Zeluff v. Ekman,* 386 S.W.2d 838 (Tex.Civ.App.–Houston 1965, no writ);[1] *Pena v. Security Title Co.,* 267 S.W.2d 847 (Tex.Civ.App.–San Antonio 1954, no writ).

### Estoppel by Oath

Appellant next contends that the summary judgment is erroneous because a fact issue exists as to whether appellee is judicially estopped from denying that an enforceable contract existed. Appellant's contention is predicated upon a prior action by Traylor for injunctive relief against El Centro Savings & Loan. In that suit, Traylor's sworn petition averred that appellant had "confirmed contracts of sale" on lots 18A and 18B. Although those sworn pleadings did not mention Vendig, deposition testimony was introduced in this summary judgment proceeding to show that the only contract to which the prior sworn pleading could have referred was the contract with appellant. We note that the sworn pleadings in the suit against El Centro refer only to "confirmed contracts of sale," and make no specific reference to the contract in the case at bar. Thus the sworn petition in the prior action does not, on its face, present any repugnancy to appellee's assertion that the contract in the case at bar is unenforceable. The question with which we are presented is whether judicial estoppel is applicable under these facts to bar appellant's assertion of the statute of frauds. We hold that it is not.

The doctrine of judicial estoppel by oath was enunciated in Texas in *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292 (1956). In a prior proceeding to restrain execution by a creditor, Knox swore that certain property was the separate property of his wife. Because of this oath, the creditor discontinued

prosecution of the suit. After Knox's death, his daughter brought an action asserting that the property was community property rather than the separate property of the wife. The court held that the truth of the assertion that the property was the separate property of the wife was conclusively established by the prior sworn pleadings and that Knox's daughter was precluded by the doctrine of judicial estoppel from later making an assertion to the contrary.

The doctrine of judicial estoppel is not a pure estoppel at common law because the elements of reliance and injury need not be present. Instead, the *Long v. Knox* doctrine is predicated upon the rationale that parties should not misuse the judicial system by taking inconsistent positions under oath in different proceedings. For a detailed analysis of this doctrine see *Metroflight, Inc. v. Shaffer,* 581 S.W.2d 704, 709 (Tex.Civ.App.–Dallas 1979, writ ref'd n. r. e.). Although the doctrine is normally invoked against a plaintiff, in a proper case, it may also preclude the assertion of an affirmative defense. *Yarber v. Pennell,* 443 S.W.2d 382 (Tex.Civ.App.–Dallas 1969, writ ref'd n. r. e.).

At the time of its adoption in Texas the doctrine had been recognized only by the courts of Tennessee. Thus the decisions of that state should be examined in applying the doctrine. *See* note, 11 S.W.L.J. 97 (1957). Under the law of Tennessee, an inconsistency by implication does not invoke the doctrine of judicial estoppel.

> That doctrine founded on contradictory statements under oath is well settled in this State and will be unhesitatingly applied in the proper case, but as we have heretofore had occasion to note, we are not disposed to extend it. It can never find application unless there has been what is equivalent to a specific and categorical denial of that which has been affirmed, unaccompanied by any reasona-

---

1. We do not necessarily approve of all the language in *Zeluff v. Ekman,* which held that the interest rate at which the buyer was to obtain a loan could not be modified by oral agreement from 6% to 6¼%. That court said that any oral modification of the financing con-

tingency provision would violate the Statute of Frauds because that provision is a condition precedent to the contract. With this latter statement we do not agree because it depends upon whether the oral modification is material to the underlying obligation.

ble explanation of the discrepancy, and unless it appears that the previous statement was not only untrue but was willfully false in the sense of conscious and deliberate perjury.

*Monroe County Motor Co. v. Tennessee Odin Insurance Co.*, 33 Tenn.App. 223, 231 S.W.2d 386, 393 (1950). Thus we must consider whether appellant's position in the case at bar is a categorical denial of his prior statement that he had confirmed contracts of sale on lots 18A and 18B. We hold that it is not.

The assertion of the Statute of Frauds in the case at bar is not a categorical denial of the sworn statement in the prior injunctive action that a confirmed contract of sale existed for Lots 18A and 18B. Assuming for the purposes of this analysis that Traylor stated under oath that he had reached an agreement to sell the land to Vendig, such a statement is not inconsistent with Traylor's position in the present case because he does not deny the existence of the contract but rather asserts that it is unenforceable because it has not been reduced to writing as required by the statute of frauds. We conclude, therefore, that the *Long v. Knox* doctrine is inapplicable to bar appellee from asserting the Statute of Frauds.

### *Fraud and Deceptive Trade Practices*

Vendig contends that the trial court erred in granting summary judgment for Traylor on the fraud and Deceptive Trade Practice Act claims. On the other hand, Traylor argues that summary judgment was proper because the record conclusively establishes that Vendig was not "adversely affected" under the Deceptive Trade Practice Act. We agree with Vendig because Traylor's motion for summary judgment set forth reasons relating only to Vendig's alleged cause of action on the contract. To sustain a summary judgment on these additional theories of recovery, the movant must specifically set forth in his motion the reasons that he is entitled to summary judgment on these theories of recovery so that the non-movant has an op-

portunity to respond and so that these reasons are called to the trial judge's attention. Because the motion failed to mention the fraud or the deceptive trade practice claims, Vendig had no opportunity to respond. *See Extended Services Program, Inc. v. First Extended Service Corporation*, 601 S.W.2d 508 (Tex.Civ.App.–Dallas 1980). Consequently, the trial judge erred in granting summary judgment against him on these theories of recovery. Tex.R.Civ.P. 166–A. We note that this situation differs from the case where the movant files a motion without setting forth specific grounds, thus casting upon the non-movant the duty to except to the motion in order to require the movant to specify the grounds upon which the movant relies. Insofar as we know these theories of recovery were not brought to the attention of the trial judge as required by rule 166–A.

Accordingly, we affirm the judgment of the trial court with respect to plaintiff's cause of action upon the alleged oral extension of the contract, but reverse and remand the judgment with respect to theories of recovery not set forth in appellee's motion for summary judgment. Costs are to be taxed one–half to appellant and one–half to appellee.