**TRITON COMMERCIAL PROPERTIES, LTD.,**
Appellant,

v.

**NORWEST BANK TEXAS, N.A., as Trustee of the Myrtle Gunn York Trust, Appellee.**

No. 13–98–607–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1999.

Houston Shell violated the DTPA.

---

5. As noted above, we need not assume the truth of Higbie's conclusory allegation that

**816**

Robert B. Gilbreath, Robert Edwin Thackston, Jenkens & Gilchrist, Dallas, Richard D. Cullen, Cullen, Carsner, Seerden & Cullen, Victoria, for appellant.

James Stofer, Duane G. Crocker, Anderson, Smith, Null, Stofer & Murphree. L.L.P., Victoria, for appellee.

Before Chief Justice SEERDEN and Justices YAÑEZ and CHAVEZ.

## O P I N I O N

Opinion by Chief Justice SEERDEN.

The primary issue in this case is whether the date for payment of an extension fee for an option to purchase real property in a written earnest-money contract may be further extended by an oral waiver and modification of that agreement. Triton Commercial Properties, Ltd. appeals from a summary judgment granted in favor of Norwest Bank Texas, N.A., declaring that Triton's contract to purchase property from Norwest terminated before Triton exercised its option to extend by paying the extension fee. We reverse and remand.

Norwest had a written contract to sell a tract of land to Triton. The contract specified a closing date of January 15, 1998, but provided that Triton could extend the closing date by paying $500 to Norwest on or before that date, as follows:

> If this sales transaction is not closed or consummated on or before January 15, 1998, this contract shall terminate and the Earnest Money shall be refunded back to Buyer, unless Buyer exercises the following option to extend the Contract on or before January 15, 1998.
>
> Buyer may extend the closing date until February 15, 1998 by Buyer tending Seller a cash consideration of $500.00 on or before January 15, 1998.....

The written contract further provided that "Time is of the essence in this Agreement."

Norwest brought the present action for declaratory judgment, claiming that, as Triton did not timely pay the $500 extension fee, the contract terminated on January 15th. Norwest moved for summary judgment on this ground and attached to its motion the affidavit of David Hill, its vice-president and trust officer, who stated that Norwest did not receive the extension payment from Triton on or before January 15, 1998. An attempted payment on January 17, 1998 was returned to Triton on the ground that the contract had terminated.

Triton responded to the summary judgment motion, raising the defenses of waiver, estoppel, oral modification, and mistake, as excuse for its late payment of the extension fee. In support of these defenses, Triton presented the affidavit of Michael D. Karns, president of Karns Commercial Real Estate, Inc., which in turn is the general partner of Triton. Karns stated that Triton obtained a contract to purchase a certain tract of land from Norwest for $891,000. Under the contract, Triton had the option to make monthly payments to extend its option to purchase the property, and Triton did make such payments from December 1996 to January 1998. Triton planned to develop the land and Karns kept in contact with Hill concerning the progress of those plans. Specifically, Karns related the following concerning the January 15, 1998, extension payment:

> On January 15, 1998 I received a telephone call from David Hill. At the time I received the call from Mr. Hill, I believed Triton had paid all options through February 15, 1998. David Hill began the conversation by stating that he was "surprised" because he thought Triton's option "payment would have been on my desk at 10:00 a.m. this morning." This comment referenced the delivery time for overnight mail

which was my usual method of sending payments. I told him I had prepaid that amount but, if there was any question, I could get the money to him immediately. Hill responded that I should "just check on it" and get back with him. I asked if there was a backup offer and he said "no, we are not looking to give this to anyone else." I had disclosed my marketing efforts to Hill in our negotiations over a six month extension, only one month before. This extension was good through July 15, 1998. He never indicated an intention to terminate the contract if the payment was not received that day. I relied on this conversation and believed that if I hadn't prepaid that option payment, then sending a check the next day would preserve my investment in the land under our contract. I checked on it that evening rather than immediately wiring the $500.00 to Norwest which I was ready and willing to do.

Karns further stated that, when he realized that payment had mistakenly not been made, he sent a check the following morning by overnight mail, which Norwest received on January 17, 1998.

Norwest replied to Triton's response, raising the Statute of Frauds as a bar to the purported oral extension of the time within which payment was due.

The trial court granted summary judgment for Norwest, declaring that the contract terminated by its own terms on January 15, 1998.

■ Triton complains by a single issue on appeal that the trial court erred in rendering summary judgment that the contract terminated on that date, because the summary judgment evidence raised a fact issue that Norwest had agreed to the late payment.

A party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether disputed material fact issues preclude summary judgment, evidence favorable to the nonmovant is taken as true; every reasonable inference is indulged in favor of the nonmovant and any doubt is resolved in his favor. *Nixon*, 690 S.W.2d at 548–49.

In the present case, Karns' affidavit presents some evidence to suggest that Hill orally agreed to extend the date of payment beyond the written deadline of January 15th. According to the affidavit, Karns did offer to make immediate payment on that same day according to the terms of the written extension agreement. Hill could easily have agreed that payment should be made that day. Instead, however, all Hill requested was that Karns "check on it," implying that he would waive payment for a reasonable period in order to let Karns determine whether or not it had already been made. Therefore, if the fact finder believes that the conversation occurred as related by Karns, then it may conclude that this amounted to an oral waiver or modification to allow Karns a reasonable time beyond January 15th to make the $500 payment.

■ However, Norwest claims that any oral agreement to extend the time for payment is invalid under the Statute of Frauds. *See* Tex. Bus. & Com.Code Ann. § 26.01(b)(4) (Vernon 1987). We disagree.

Whether couched in terms of "waiver" or "oral modification," Hill's implied representations to Karns, if accepted as such, amounted to an oral alteration of the written deadline for paying the $500 fee to extend the term of the present purchase agreement.[1]

---

1. In the present case, it would not be practical to attempt to distinguish the concept of "waiver" from that of "modification." Hill's alleged waiver of the deadline for making payment by orally agreeing to late payment is indistinguishable from an oral agreement to modify the time for payment. Accordingly,

**818**

As an exception to the general rule against oral modification of contracts covered by the Statute of Frauds, parties to a written contract may agree orally to extend the time of performance, so long as the oral agreement is made before the expiration of the written contract. *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex.1967); *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex.App.—Corpus Christi 1986, no writ); *Watkins v. Arnold*, 60 S.W.2d 476, 477 (Tex.Civ.App.—Texarkana 1933, writ ref'd) (citing *Bullis v. Noyes*, 75 Tex. 540, 12 S.W. 397 (1889)). Time for performance may be orally extended even if the written contract provides that time is of the essence. *Puckett v. Hoover*, 146 Tex. 1, 202 S.W.2d 209, 211–12 (1947) (extension of time for seller of mineral interest to clear up an outstanding interest in the property); *Shaver v. Schuster*, 815 S.W.2d 818, 824 (Tex.App.—Amarillo 1991, no writ);*Carpet Services, Inc. v. George A. Fuller Co.*, 802 S.W.2d 343, 346 (Tex. App.—Dallas 1990), *aff'd*, 823 S.W.2d 603 (Tex.1992); *Joiner*, 716 S.W.2d at 609. Moreover, such an extension of time for performance may be implied as well as express, and where the exact duration of an extension of time is not expressed, the law will imply a reasonable time. *Cotten v. Deasey*, 766 S.W.2d 874, 877 (Tex. App.—Dallas 1989, writ denied); *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 846 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Specifically, this exception includes an oral extension of time to make a required payment under the contract, before the time for such payment has expired. *See Zwick v. Lodewijk Corp.*, 847 S.W.2d 316, 319 (Tex.App.—Texarkana 1993, writ denied) (oral modification of lease to allow tenant to make timely payments at any time during the month in which they were due); *Troutman v. Interstate Promotional Printing Co.*, 717 S.W.2d 428 (Tex.App.— San Antonio 1986, writ ref'd n.r.e.) (oral agreement for extension of time for pay-

ment on a promissory note); *see also Vendig v. Traylor*, 604 S.W.2d 424, 427 (Tex. Civ.App.—Dallas 1980, writ ref'd n.r.e.)(oral agreement to extend time to secure financing for the purchase of real estate).

However, such an oral modification is enforceable only if it does not materially alter the underlying written contract. *King v. Texacally Joint Venture*, 690 S.W.2d 618, 619 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *Vendig*, 604 S.W.2d at 427. Accordingly, where the oral modification does more than merely extend the term of the contract, as where the termination date changes still other contractual rights and duties, it materially affects the written contract and must itself be in writing. *Dracopoulas*, 411 S.W.2d at 722. In other words, where the terms of the extension differ so much as to make the modification an entirely new contract, the oral modification is unenforceable under the Statute of Frauds. *Vendig*, 604 S.W.2d at 427(citing *Bullis v. Noyes*, 75 Tex. 540, 12 S.W. 397 (1889)).

For example, in *Dracopoulas* the Texas Supreme Court concluded that an oral agreement to indefinitely extend a real estate listing agreement that substantially affected the broker's right to a commission on the sale was a material modification that had to be in writing. And in *Vendig*, the Dallas Court of Appeals concluded that a provision that a land sale was contingent on the purchaser obtaining financing by a specified date before a scheduled foreclosure sale was a material term that could not be extended by oral agreement in view of the pending foreclosure sale.

However, when the extension of time to make payment on an option contract has no such collateral effects on other rights under the underlying written contract, the exception applies to allow oral modification. *But see King*, 690 S.W.2d at 619 (Austin Court of Appeals broadly stated that attempted oral modification of time

the statute of frauds applies as it would in the case of any other oral modification.

for performance in a real estate sales contract amounted to a material alteration, citing *Vendig,* but then avoided the entire issue by holding that the purchaser in fact complied with the terms of the original written contract).

■ In the present case, the summary judgment evidence suggests a mere extension of time to make payment, with no apparent collateral effects aside from the extension itself. Norwest places great emphasis on the fact that, absent the extension, the contract would have terminated on January 15th. However, the mere extension of time for performance does not, by itself, materially alter the nature of the underlying contract, even if the contract would otherwise have terminated. *See Puckett,* 202 S.W.2d at 211–12. Thus the Statute of Frauds does not bar evidence of an oral agreement. Accordingly, we conclude that the trial court erred in granting summary judgment declaring that the contract terminated. We sustain Triton's issue on appeal.

The judgment of the trial court is REVERSED and this case is REMANDED for trial.