ALCOA, et al. v. Hydrochem
















NUMBER 13-02-00531-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG
                                                                                                                       

ALCOA, REYNOLDS METALS COMPANY, RON
WARPULA, AND PAUL STANLEY DANSER, JR.,                   Appellants,

v.

HYDROCHEM INDUSTRIAL SERVICES, INC.,                            Appellee.
                                                                                                                       

On appeal from the 28th District Court of Nueces County, Texas.
                                                                                                                       

MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Castillo
Memorandum Opinion by Justice Hinojosa

          This is an appeal from a summary judgment in a third-party action brought by
appellants, ALCOA, Reynolds Metals Company, Ron Warpula, and Paul Stanley Danser,
Jr. (collectively “ALCOA”), against appellee, Hydrochem Industrial Services, Inc.
(“Hydrochem”), for indemnity. Noe Edward Recio, a Hydrochem employee, sued ALCOA
for personal injuries he sustained on March 21, 2000, while performing his duties for
Hydrochem on ALCOA’s premises. ALCOA filed this third-party action against Hydrochem,
seeking indemnity for its alleged negligence. Both parties moved for summary judgment. 
The trial court granted Hydrochem’s motion and denied appellants’ motion.
          In eight issues, appellants contend the trial court erred in granting Hydrochem’s
motion for summary judgment and in denying their motion for partial summary judgment. 
We affirm the trial court’s order denying appellants’ motion for partial summary judgment. 
We reverse the trial court’s order granting appellee’s motion for summary judgment and
remand the case to the trial court for further proceedings.
         As this is a memorandum opinion and the parties are familiar with the facts, we will
not recite them here except as necessary to advise the parties of our decision and the
basic reasons for it. See Tex. R. App. P. 47.4.
A. Standard of Review 
          We review the granting of a traditional motion for summary judgment de novo. 
Alejandro v. Bell, 84 S.W.3d 383, 390 (Tex. App.–Corpus Christi 2002, no pet.). A movant
for summary judgment has the burden of showing that there is no genuine issue of material
fact, and he is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). In deciding whether to sustain summary judgment, we
accept all evidence favorable to the non-movant as true, indulge the non-movant with every
reasonable inference, and resolve any doubt in the non-movant’s favor. Id.; ABB
Kraftwerke v. Brownsville Barge & Crane, Inc., 115 S.W.3d 287, 290 (Tex. App.–Corpus
Christi 2003, pet. denied). Summary judgment is proper if a plaintiff conclusively proves
all elements of each claim as a matter of law, or if a defendant disproves at least one
element of each of the plaintiff’s claims. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997). A party moving for summary judgment on the basis of an affirmative
defense must expressly present and conclusively prove all essential elements of their
defense as a matter of law. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 530 (Tex.
1997) (per curiam); Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex. 1984). When
both parties move for summary judgment and one motion is granted and the other denied,
the appellate court must rule on all questions presented by the motions and render such
judgment as the trial court should have rendered. Jones v. Strauss, 745 S.W.2d 898, 900
(Tex. 1988) (per curiam); Lorenz v. Janssen, 116 S.W.3d 421, 424 (Tex. App.–Corpus
Christi 2003, no pet.).
B. Applicability of Purchase Order 060972LQ 
          In their seventh issue, appellants contend that Purchase Order 060972LQ controls
the contractual relationship between the parties. They assert: (1) ALCOA issued PO
060972LQ to Hydrochem; and (2) Recio was injured while performing work that PO
060972LQ required Hydrochem to perform.
          Hydrochem contends that PO 060972LQ had expired by its own terms, and that we
should look to either the Statement of Clarifications, Modifications and Exceptions
(“Statement”) executed between ALCOA and Halliburton Industrial Services Division of
Brown & Root (“Halliburton”), or the Addendum for Offsite Transportation executed
between ALCOA and Hydrochem in August 2000. 
1. Expiration of PO 060972LQ
          A contract provision for an exact date of performance can be waived by the parties. 
Willis v. Donnelly, 118 S.W.3d 10, 28 (Tex. App.–Houston [14th Dist.] 2003, pet. filed) (op.
on reh’g); Intermedics Inc. v. Grady, 683 S.W.2d 842, 846 (Tex. App.–Houston [1st Dist.]
1984, writ ref’d n.r.e.). An extension of time for performance can be either implied or
express; if the duration is not expressly stated, the law will imply a reasonable time. 
Intermedics, 683 S.W.2d at 846. “The effect of such an extension is merely to substitute
a new time for the old. It does not effect the other provisions of the contract.” Id; see
Triton Commer. Props. Ltd. v. Norwest Bank Tex. N.A., 1 S.W.3d 814, 819 (Tex.
App.–Corpus Christi 1999, pet. denied); Ryan v. Thurmond, 481 S.W.2d 199, 206 (Tex.
App.–Corpus Christi 1972, writ ref’d n.r.e.). “The extension of a term of a contract is an
extension of all of its provisions.” Sieber & Calicutt, Inc. v. La Gloria Oil & Gas Co., 66
S.W.3d 340, 347 (Tex. App.–Tyler 2001, pet. denied); see Double Diamond, Inc. v. Hilco
Elec. Coop., Inc., 127 S.W.3d 260, 266 (Tex. App.–Waco 2003, no pet.).
          In Sieber v. Calicutt, Sieber continued to perform maintenance services at a refinery
owned by La Gloria well after the contract had expired by its own terms, and La Gloria
continued to pay the invoices for those services. Sieber, 66 S.W.3d at 344. When a La
Gloria employee died at the refinery after the expiration of the contract, the parties disputed
whether the indemnity provision in the contract was still in effect. Id. at 345. The court
held that because the parties had continued to operate under the contract after it had
expressly expired, all provisions, including the indemnity agreement, were still in effect on
the date of the employee’s death. Id. at 347. 
          Sieber is highly analogous to the facts at hand. Even though the contract had
expressly expired, both Hydrochem and ALCOA continued to operate under it. Hydrochem
performed services that they billed to ALCOA under PO 060972LQ, and ALCOA continued
to pay the invoices. In addition, the course of dealings between the parties showed that
contracts had frequently been extended beyond their express expiration date. We
conclude that the continued performance by both parties under PO 060972LQ impliedly
extended the time for performance and all attending provisions.
2. Statement of Clarifications, Modifications and Exceptions
          In 1993, ALCOA and Halliburton executed a “Statement of Clarifications,
Modifications and Exceptions” which was intended to supplement the general terms and
conditions attached to all ALCOA Purchase Orders; where terms differed, the Statement
was to control. In January 1995, Hydrochem purchased substantially all the assets of
Halliburton. Hydrochem asserts that in the Bill of Sale, Halliburton assigned all of its rights
under the designated contracts to Hydrochem, including the Statement. Hydrochem
contends that the Statement controls its contractual relationship with ALCOA. 
          For an agreement to be legally binding and enforceable, it must be “complete within
itself in every material detail, and contain . . . all of the essential elements of the
agreement.” Hardman v. Dault, 2 S.W.3d 378, 380 (Tex. App.–San Antonio 1999, no pet.)
(op. on reh’g) (quoting Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995)). The terms
of a contract must be defined with enough clarity and precision that a court can determine
the obligations of the parties. Gannon v. Baker, 830 S.W.2d 706, 709 (Tex. App.–Houston
[1st Dist.] 1992, writ denied). Where a contract leaves essential terms open for future
negotiation and adjustment, there is no binding contract that can be enforced. T.O.
Stanley Boot Co., Inc. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992); Engelman
Irrigation Dist. v. Shields Bros., 960 S.W.2d 343, 352 (Tex. App.–Corpus Christi 1997, pet.
denied). A fatal indefiniteness in a contract may concern the time of performance, the
price to be paid, the work to be done, the service to be rendered, or the property to be
transferred. Engelman, 960 S.W.2d at 352; Gannon, 830 S.W.2d at 709. Whether an
agreement fails for indefiniteness is a question of law to be determined by the court. See
Stanley Boot, 847 S.W.2d at 222. 
          The Statement was intended to be incorporated, by reference, into contracts
between Halliburton and ALCOA. At the time that Hydrochem purchased Halliburton’s
assets, no contracts existed between Halliburton and ALCOA. The Bill of Sale reflects the
Statement was assigned as a stand-alone contractual agreement. However, we note the
Statement does not set out what services are to be rendered, what work is to be done, the
time or location for performance, or the price to be paid. The Statement merely sets out
incidental terms regarding indemnity, insurance, and liability. Accordingly, we conclude the
Statement lacks sufficient definition of material terms to constitute an enforceable
agreement and thus, fails for indefiniteness. Because the Statement does not constitute
a legally binding agreement, we hold that no enforceable rights existed under it to be
assigned to Hydrochem.
3. Addendum for Offsite Transportation
          Hydrochem contends, in the alternative, that if PO 060972LQ is found to have been
in effect on March 21, 2000, it should be interpreted as subject to the “Addendum for
Offsite Transportation” (“Addendum”) executed between Hydrochem and ALCOA on
August 4, 2000.
          Hydrochem argues that provisions may be binding even if agreed to after
performance of the work. See M/V American Queen v. San Diego Marine Constr. Corp.,
708 F.2d 1483, 1489 (9th Cir. 1983) (marine repair company signed a back-dated,
standardized contract after completing repair work on rudder; “it is a practice in the ship
repair industry to do the repair work before sending an invoice containing the contract for
repairs”); Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1120 (5th Cir. 1992)
(“where parties share a history of business dealings and standardized provisions have
become part of those dealings, such familiar provisions within purchase orders issued after
performance are binding where they are accepted without objection”).
          We conclude that the cases cited by Hydrochem are inapposite to the facts at hand. 
Here, a purchase order was already in effect at the time the work was performed. Further,
while Hydrochem and ALCOA had at other times issued purchase orders after work was
completed, the Addendum is not a purchase order containing familiar, standardized
provisions.
          While parties can choose to apply a contract retroactively, Gulf Oil Corp. v. Spence
& Howe Constr. Co., 356 S.W.2d 382, 386 (Tex. Civ. App.–Houston, 1962), overruled in
part on other grounds, Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex. 1987),
this intent is not evident from the terms of the Addendum. An unambiguous contract will
be enforced as written. Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex.
2000). A contract is not ambiguous if it can be given a certain and definite legal meaning. 
Id. In construing an unambiguous contract, language should be accorded its plain
grammatical meaning unless it appears that the intention of the parties would be defeated. 
Pegasus Energy Group., Inc. v. Cheyenne Petroleum Co., 3 S.W.3d 112, 128 (Tex.
App.–Corpus Christi 1999, pet. denied) (citing Reilly v. Rangers Mgmt., Inc., 727 S.W.2d
527, 529 (Tex. 1987)). Whether a contract is ambiguous is a question of law for the court. 
Heritage Res. Inc., v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). A contract is not
rendered ambiguous because the parties disagree over the meaning of a contract
provision. Pegasus, 3 S.W.3d at 120.
          The record reflects the Addendum was proposed by Hydrochem on May 1, 2000,
and it was executed by ALCOA on August 4, 2000, more than four months after Recio’s
accident. The terms of the Addendum are not ambiguous. The Addendum provides that
it “shall be a part of any purchase order. . .” between ALCOA and Hydrochem (emphasis
added). We find nothing in the language of the Addendum, nor in the course of dealing
between the parties, to indicate that the Addendum was intended to apply to past purchase
orders. Accordingly, we conclude that on the date of Recio’s injury, PO 060972LQ was not
subject to the Addendum. We hold that PO 060972LQ, with unaltered attending
provisions, was the operative contractual document in effect on March 21, 2000. 
Appellants’ seventh issue is sustained.
C. Statutory Bars to Enforcement
          In their third issue, appellants contend there are no statutory bars to enforcement
of the indemnity and insurance agreements contained in PO 060972LQ. Hydrochem
argues that enforcement of the indemnity provision is barred by, alternatively, the Statute
of Frauds, the Worker’s Compensation Statute, or the Texas Oil-field Anti-Indemnity Act.
 1. Statute of Frauds
          While the Statute of Frauds prevents the enforcement of “a promise by one person
to answer for the debt, default, or miscarriage of another” without a signed writing, Tex.
Bus. & Comm. Code Ann. § 26.01(Vernon 2004), partial performance removes a contract
from the Statute of Frauds. Avila v. Gonzalez, 974 S.W.2d 237, 246 (Tex. App.–San
Antonio, 1998, pet. denied) (op. on reh’g). Where one party fully performs a contract, the
Statute of Frauds is unavailable to the other party who knowingly accepts benefits and
partly performs. Id; see 626 Joint Venture v. Spinks, 873 S.W.2d 73, 76 (Tex. App.–Austin
1993, no pet.); see also Estate of Kaiser v. Gifford, 692 S.W.2d 525, 526 (Tex.
App.–Houston [1st Dist.] 1985, writ ref’d n.r.e.); Oak Cliff Realty Corp. v. Mauzy, 354
S.W.2d 693, 695 (Tex. Civ. App.–Fort Worth 1962, writ ref’d n.r.e.); Wingart v. Baxter, 30
S.W.2d 522, 527 (Tex. Civ. App.–Galveston 1930, writ ref’d). ALCOA fully performed by
rendering full payment in accordance with the contract terms. Hydrochem accepted the
benefit of ALCOA’s performance and partially performed by rendering the contracted for
services. Under these circumstances, we hold the Statute of Frauds is unavailable as a
bar against enforcement of the remaining terms.
2. Texas Worker’s Compensation Statute
          The Texas Worker’s Compensation Act provides that a subscribing employer may
not be held liable to a third party for a judgment or settlement resulting from the injury or
death of an employee “unless the employer executed, before the injury or death occurred,
a written agreement with the third party to assume liability.” Tex. Lab. Code Ann. §
417.004 (Vernon 2004). Hydrochem argues that under the Worker’s Compensation Act, 
the indemnity provision is unenforceable because ALCOA has not produced a signed
indemnity agreement. Hydrochem would have us apply a stricter standard than is required
by the statute. 
          “The execution of a contract includes the performance of all acts necessary to
render it complete as an instrument.” Verson Allsteel Press Co. v. Carrier Corp., 718
S.W.2d 300, 303 (Tex. App.–Tyler 1985, writ ref’d n.r.e.) (per curiam). For a written
contract to be valid, it is not necessary that the agreement be signed by both parties. “[If]
one party signs, the other may accept by his acts, conduct, or acquiescence in the terms
of the contract.” Velasquez v. Schuehle, 562 S.W.2d 1, 3 (Tex. Civ. App.–San Antonio
1977, no writ). Further,
[t]he absence of a signature on a contract does not necessarily destroy its
validity . . . . As long as the parties give their consent to the terms of the
contract, and there is no evidence of an intent to require both signatures as
condition precedent to it becoming effective as a contract, signatures are not
a required factor in the making of a valid contract.
 
ABB Kraftwerke, 115 S.W.3d at 292 (citing Simmons & Simmons Constr. Co., Inc. v. Rea,
286 S.W.2d 415, 418 (Tex. 1955)). 
          PO 060972LQ is a written agreement between the parties. The mere lack of a
signature does not destroy its validity. Because the agreement satisfies the statutory
requirement, we hold the Texas Worker’s Compensation Act does not bar enforcement of
the indemnity agreement. 
3. Texas Oil-Field Anti-Indemnity Act
          The Texas Oil-Field Anti-Indemnity Act voids indemnity agreements that purport to
indemnify a person for his own negligence if they are “contained in, collateral to, or
affecting an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral.” 
Tex. Civ. Prac. & Rem. Code Ann. §127.003 (Vernon 2004). Hydrochem argues that the
Anti-Indemnity Act applies in this case because the Sherwin Alumina Plant, where Recio’s
accident occurred, is regulated by the Federal Mine Safety and Health Administration
(“MSHA”) pursuant to the Mine Safety and Health Act, 30 U.S.C. § 801 et. seq. (2004). 
Although both statutes deal with mining generally, they define their areas of coverage quite
differently. Regulation by the MSHA does not automatically make a facility subject to the
Texas Anti-Indemnity Act. 
          The Federal Mine Safety and Health Act provides “a sweeping definition for a mine,
encompassing much more than the usual meaning attributed to it.” In re Kaiser Aluminum
and Chem. Co., 214 F.3d 586, 590 (5th Cir. 2000) (citing Bush & Burchett, Inc. v. Reich,
117 F.3d 932, 936 (6th Cir. 1997)). In addition to the common definition of a mine as “an
area of land from which minerals are extracted,” it also includes “facilities . . . used in, or
to be used in, the milling of such minerals. . . .” 30 U.S.C. § 802(h)(1). The Sherwin
Alumina Plant falls under the MSHA because it is a “milling” operation,


 not a “mining”
facility. It is this portion of the MSHA definition which differs significantly from the Texas
Anti-Indemnity Act.
          The Texas Anti-Indemnity Act defines an agreement pertaining to a well or mine as
“(i) a written or oral agreement or understanding concerning the rendering of well or mine
services; or (ii) an agreement to perform a part of those services or an act collateral to
those services, including furnishing or renting equipment, incidental transportation, or other
goods and services furnished in connection with the services.” Tex. Civ. Prac. & Rem.
Code Ann. §127.001(1)(A)(i)-(ii) (Vernon 1997). A “mine service” is defined as “designing,
excavating, constructing, improving or otherwise rendering services in connection with a
mine shaft, drift, or other structure intended for use in exploring for or producing a mineral.” 
Tex. Civ. Prac. & Rem. Code Ann. §127.001(4)(A)(ii) (Vernon 1997). 
          The Texas statute does not include milling operations in its defined area of
coverage. While mineral milling is peripherally related to mining, it constitutes a separate
and distinct category of facilities. Because application of the Texas Oil-Field Anti-Indemnity
Act to these facilities would extend the Act beyond its intended coverage, we hold the Act
does not bar enforcement of the indemnity provision. Appellants’ third issue is sustained.
D. Enforceability of Indemnity Provision
          In their fourth issue, appellants contend the indemnity provision in PO 060972LQ
complies with all the requirements of fair notice and is enforceable as a matter of law. 
          Indemnity agreements are construed under the normal rules of contract
construction, with the primary goal of determining the intent of the parties. Assoc. Indem.
Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998). However, because
indemnifying a party for its own negligence is an extraordinary shifting of risk, the Texas
Supreme Court has imposed fair notice requirements to these types of agreements. 
Dresser Indus., Inc. v. Page Petroleum, 853 S.W.2d 505, 508 (Tex. 1993). Fair notice
demands that for an indemnity clause to be valid, it must satisfy both the express
negligence test and the conspicuousness requirement. Id. Whether an indemnity clause
complies with these fair notice requirements is a question of law for the court. Id. at 509.
1. Express Negligence
          The express negligence doctrine provides that a party “seeking to indemnify the
indemnitee from the consequences of its own negligence must express that intent in
specific terms. . . . [T]he intent of the parties must be specifically stated within the four
corners of the contract.” Ethyl Corp., 725 S.W.2d at 708; Dresser Indus., 853 S.W.2d at
508; Enserch Corp. v. Parker, 794 S.W.2d 2, 8 (Tex. 1990). The purpose of the express
negligence rule is to require parties to make it clear when the intent is to exculpate an
indemnitee for the indemnitee’s own negligence. Atlantic Richfield Co. v. Petroleum Pers.,
Inc., 768 S.W.2d 724, 726 (Tex. 1989).
          In the Ethyl case, Ethyl argued that the language “any loss . . . as a result of
operations growing out of the performance of this contract and caused by the negligence
or carelessness of the Contractor” in the indemnity provision was intended to include the
negligence of the indemnitee. Ethyl Corp., 725 S.W.2d at 708 (emphasis added). The
supreme court held that the language did not clearly indicate such an intention and the
demands of express negligence would not allow such an attenuated interpretation. Id.
          Conversely, the supreme court upheld the indemnity clause in the Atlantic Richfield
case. That clause provided that the indemnitor would indemnify the indemnitee for “any
negligent act or omission of [the indemnitee], its officers, agents, or employees . . . .” 
Atlantic Richfield, 768 S.W.2d at 724 (emphasis added). The court considered this
language to be sufficiently direct to define the parties’ intent and satisfy the express
negligence requirement. Id.
          The indemnity clause in this case provides:
4. LIABILITY. 
 
(a) The presence at the jobsite of Seller [Hydrochem] . . . is at Seller’s risk. 
Seller shall protect, defend and indemnify Buyer [ALCOA] . . . from and
against any and all claims, losses, damages, costs, actions, judgments,
expenses and liabilities of every kind and nature whatsoever . . . in any way
connected with . . . the performance of the Work, including, but not limited
to, actual or alleged bodily injury . . . resulting from any act or omission,
negligent or other-wise, on the part of Seller. . . . 
 
(b) The provisions of section 4(a) shall apply whether or not the damage,
injury or loss was caused or contributed to . . . by the active, passive,
affirmative, sole or concurrent negligence . . . on the part of Buyer. . . . 
  
          Express negligence does not mandate that in order for an indemnity clause to be
enforceable it must be the best or the briefest possible statement of the parties’ intentions,
only that it specifically define the parties’ intent. See Atlantic Richfield Co., 768 S.W.2d at
726; see also Enserch, 794 S.W.2d at 7-8. In Enserch, the supreme court held that “an
indemnity agreement need not be confined to one sentence” when it is clear that “the
contract as a whole is sufficient to define the parties’ intent that [the indemnitor] indemnify
[the indemnitee] for the consequences of [the indemnitee’s] own negligence.” Enserch,
794 S.W.2d at 8. The indemnity agreement in Enserch provided that “Christie would
indemnify Enserch for any claims ‘regardless of whether such claims are founded in whole
or in part upon alleged negligence of Enserch.’” Id. The agreement further provided: 
“Christie ‘further agrees to indemnify and hold harmless Enserch . . . in respect to any such
matters . . . .’” Id. The true intent of the clause was not concealed because the references
to indemnification and negligence were made in separate sentences. See id.
          While the express negligence rule prevents scriveners from obscuring the meaning
of an indemnity clause via lengthy and ambiguous language, division into two paragraphs
which respectively state that (1) the indemnitor indemnifies the indemnitee from the
indemnitor’s negligence, and (2) the indemnitor also indemnifies the indemnitee from the
indemnitee’s own negligence, does not make the clause so unwieldy as to conflict with the
express negligence requirement. See id. 
          We conclude that sections 4(a) and 4(b) are two parts of a whole section regarding
the liability of the parties, that taken together clearly define the parties’ intent that
Hydrochem indemnify ALCOA for any consequences of ALCOA’s own negligence. 
Accordingly, we hold that the ALCOA-Hydrochem indemnity clause satisfies the express
negligence requirement. 
2. Conspicuousness
          In Dresser Indus., the Texas Supreme Court adopted the Uniform Commercial Code
(UCC) standard for conspicuousness. Dresser Indus., 853 S.W.2d at 511. The UCC
standard provides:
A term or clause is conspicuous when it is so written that a reasonable
person against whom it is to operate ought to have noticed it. A printed
heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is
conspicuous. Language in the body of a form is “conspicuous” if it is in
larger or other contrasting type or color. But in a telegram, any term is
“conspicuous.”
 
Id. at 510 (citing Tex. Bus. & Com. Code Ann. § 1.201(10) (Vernon Supp. 2004-05)).
          The ALCOA-Hydrochem contract consists of the purchase order and six additional
contract documents which are incorporated by reference. The type on the face of the
purchase order is in all capital letters. The indemnity clause is located on Supplemental
Terms and Conditions Form R-380-1. Form R-380-1 consists of two pages of small type-written text divided into sixteen numbered sections. Each section heading is printed in bold
capital letters. The indemnity provision is found in Section 4, entitled “LIABILITY.”
          Texas courts have applied the conspicuousness requirement to indemnity clauses
not found on the front page of a contract. In K&S Oil, the bottom of the second page of a
purchase order contained a statement in “ordinary, but slightly smaller type” which said
“subject to the terms and conditions on the reverse side.” K&S Oil Well Serv. Inc. v. Cabot
Corp., 491 S.W.2d 733, 736 (Tex. App.–Corpus Christi 1973, writ ref’d n.r.e.). On the
reverse side, the indemnity clause was located under the heading “Terms and Conditions,”
in the fourth paragraph entitled “Warranty.” The entire indemnity clause consisted of one
sentence which was surrounded by unrelated terms. Id. at 737-38. This Court held that
the indemnity clause was not conspicuous enough to import fair notice. Id. at 738. 
          Similarly, in Dresser Indus., the indemnity provision was “located on the back of a
work order in a series of numbered paragraphs without heading or contrasting type.” 
Dresser Indus., 853 S.W.2d at 511. The front of the contract contained a provision
incorporating all paragraphs. Id. at 511 n.6. The court noted the “contracts are not so
short that every term in the contracts must be considered conspicuous” and held that the
provisions did not comply with the conspicuousness requirement. Id. at 511. 
          The front of each page of the purchase order in Goodyear Tire and Rubber Co. v.
Jefferson Constr. Co., 565 S.W.2d 916 (Tex. 1978), contained the following language
printed in large red type:
Important Notice to Seller. This purchase order is expressly made subject
to, and your acceptance is strictly limited to, the terms and conditions stated
herein, including the terms and conditions stated on the reverse side hereof.
 
Id. at 920. The contract language also specifically referred to the “hold harmless” provision
on the reverse side. Id. The supreme court found this constituted “some evidence that the
indemnity provision was conspicuous enough to give . . . fair notice of its existence.” Id.


 
          After considering all of the above, we conclude the indemnity provision is not
sufficiently conspicuous to satisfy the fair notice requirement. In order to meet the
conspicuous requirement, something indicating the intent to transfer liability must appear
on the face of the contract sufficient to attract the attention of a reasonable person. 
Dresser Indus., 853 S.W.2d at 508; UPS Truck Leasing, Inc. v. Leaseway Transfer Pool,
Inc., 27 S.W.3d 174, 176 (Tex. App.–San Antonio 2000, no pet.). Of the six additional
contract documents incorporated by reference on the face of Purchase Order 060972LQ,
five are labeled to indicate their contents: (1) “AFFIDAVIT, RELEASE AND WAIVER OF
LIENS FORM R-379-5,” (2) “SAFETY POLICY PROCEDURE #151,” (3) “RMCO. FORM
R-379-8 POLICY ON SUBSTANCE ABUSE,” (4) “RMC SPEC. WS-LQ-192 R/11
‘CONTRACTORS’ GENERAL WORK CONDITIONS,’” and (5) “RATE SHEETS.” However,
the reference to the document containing the indemnity clause is generically labeled
“SUPPL. TERMS & CONDITIONS FORM R-380-1.” Had Form R-380-1 been the only
document incorporated by reference, its singularity may have called sufficient attention to
itself. However, as one document in a list of several, we conclude the generic title does
not attract the attention of a reasonable person to afford fair notice of the presence of a
risk-shifting indemnity clause contained therein. Whether the heading “LIABILITY” is
conspicuous enough to attract the attention of a reasonable person looking at Form R-380-1 is inconsequential if nothing on the face of the purchase order indicates that a
reasonable person should look at Form R-380-1. The intent of the fair notice requirements
is defeated if parties are allowed to remove risk-shifting clauses to secondary documents
that are only inconspicuously referenced on the face of the contract.
3. Actual Knowledge
          ALCOA argues that the indemnity clause may still be given effect because
Hydrochem had actual knowledge of the clause. Because the purpose of the
conspicuousness requirement is to protect a contracting party from surprise and an
unknowing waiver of rights, whether language is inconspicuous becomes immaterial if the
indemnitee can establish that the indemnitor had actual knowledge of the indemnity clause. 
Cate v. Dover Corp., 790 S.W.2d 559, 561-62 (Tex. 1990); Dresser Indus., 853 S.W.2d at
508 n.2. Actual knowledge is treated as an affirmative defense to a claim of lack of fair
notice. U.S. Rentals, Inc. v. Mundy Serv. Corp., 901 S.W.2d 789, 793 (Tex. App.–Houston
[14th Dist.] 1995, writ denied) (op. on reh’g). The burden of establishing actual knowledge
is on the party seeking indemnification. Mo. Pac. R.R. Co. v. Lely Dev. Corp., 86 S.W.3d
787, 791 (Tex. App.–Austin 2002, pet. dism’d).  
          Actual knowledge can result from prior dealings of the parties, or if the indemnitee
specifically brings the inconspicuous waiver to the indemnitor’s attention. Cate, 790
S.W.2d at 561. Whether a party had actual notice or knowledge is generally a question
of fact. Goodyear, 565 S.W.2d at 919. The determination can be made as a matter of law
“only when there is no room for reasonable minds to differ.” Id. at 919-20. 
          To succeed on their own motion for summary judgment on the basis of actual
knowledge, ALCOA had to conclusively show that Hydrochem had actual knowledge of the
indemnity provision as a matter of law. Montgomery, 699 S.W.2d at 311. However, to
succeed in obtaining the denial of Hydrochem’s motion for summary judgment, ALCOA,
as the non-movant, only had to show that there was a genuine issue of fact regarding
Hydrochem’s actual knowledge of the indemnity clause. Cate, 790 S.W.2d at 562; U.S.
Rentals, 901 S.W.2d at 793. 
          ALCOA presented summary judgment evidence on its course of dealing with
Hydrochem. The evidence showed that between 1995 and 2000, Hydrochem performed
work for ALCOA under at least thirteen separate purchase orders, the material terms of
which were essentially identical to those in PO 060972LQ. All thirteen purchase orders
referenced “Supp. Terms and Conditions Form R-380-1.” Multiple copies of Form R-380-1
were found in Hydrochem’s files, including a file on Reynolds Metals, labeled “Terms and
Conditions” which contained a complete copy of Purchase Order 040138LQ, with a Form
R-380-1 attached. 
          ALCOA also presented evidence that in September 1996, a contracts administrator
for Hydrochem had reviewed Purchase Order 060611LQ, including Form R-380-1. During
this review, Hydrochem objected and issued a letter proposing revisions to several terms
contained in the contract, including the indemnity and additional-insured clauses. An
addendum was issued altering the specific terms contested here, effective only regarding
PO 060611LQ.
          ALCOA’s summary judgment evidence does not conclusively establish that
Hydrochem had actual knowledge of the indemnity provision. However, we conclude the
evidence raises a fact question regarding actual knowledge.
 
E. “Additional-Insured” Provision
          In their fifth issue, appellants assert the contract contained an additional-insured
requirement, separate and distinct from the indemnity provision. Therefore, they argue,
Hydrochem was required to name ALCOA as an additional insured regardless of the
applicability of the indemnity clause.
          Liability insurance provisions are often included as part of indemnity agreements to
guard against insolvency of the indemnitor. Fireman’s Fund Ins. v. Commercial Standard
Ins. Co., 490 S.W.2d 818, 823 (Tex. 1972). Additional-insured provisions that are solely
supplemental to an indemnity provision have no effect beyond the applicability of the
indemnity agreement. Id. However, an additional-insured provision that constitutes a
separate obligation is not limited to the scope of any indemnity clause and could require
an obligor to provide insurance coverage to an obligee that would effectively relieve the
obligee of responsibility for its own actions without a valid indemnity agreement. Getty Oil
Co. v. Ins. Co. of N. America, 845 S.W.2d 794, 804-05 (Tex. 1992).
          In Getty Oil, the Texas Supreme Court identified two factors it considered important
in determining when an additional-insured provision is a separate and distinct obligation
from an indemnity agreement: (1) whether the indemnity clause contains an internal
provision stating that insurance is required to cover the extent of indemnity, and (2)
whether the general additional-insured provision specifies that it applies “whether or not
required by the other provisions of the contract.” Id; see Emery Air Freight Corp. v. Gen.
Transp. Sys., Inc., 933 S.W.2d 312, 315 (Tex. App.–Houston [14th Dist.] 1996, no writ). 

           The additional-insurance provision in this case provides:
3. INSURANCE. 
 
(a) Seller [Hydrochem] shall not commence performance of the Work until
it has furnished Buyer [ALCOA] with certificates of insurance . . . . Such
policies shall provide for (i) Workers’ Compensation . . . (ii) Employer’s
Liability . . . (iii) Comprehensive General Liability . . . and (iv) Comprehensive
Automobile Liability . . . .
 
(b) Except for the Workers’ Compensation insurance, Buyer [ALCOA] . . .
shall be named as additional insureds in all of the foregoing insurance
policies . . . .
 
(c) The aforesaid insurance coverage is intended to protect Buyer [ALCOA]
. . . against any and all claims, losses, damages, costs, actions, judgments,
expenses and liabilities which . . . result from the performance of the Work. 
 
          This provision does not specify that it applies “whether or not required” by other
clauses in the contract. Further, the indemnity agreement does not contain a separate,
internal additional-insured provision. We conclude the absence of these elements shows
the ALCOA-Hydrochem additional-insured provision was not intended to stand alone as
a distinct obligation, but was intended only to assure the performance of the
indemnification agreement. Appellants’ fifth issue is overruled.
          In light of our disposition of these issues, it is unnecessary to address appellants’
remaining issues. Tex. R. App. P. 47.1. 
          We affirm the trial court’s order denying appellants’ motion for partial summary
judgment. We reverse the trial court’s order granting appellee’s motion for summary
judgment and remand the case to the trial court for further proceedings. 

                                                                           FEDERICO G. HINOJOSA
                                                                           Justice


Memorandum Opinion delivered and filed this
the 17th day of March, 2005.